### PAYNE and another *against* CLARK.

In order to maintain an action of trespass *qu. cl. fr.,* the plaintiff must have been in possession of the land, when the injury complained of was committed ; a legal title in the plaintiff, without such possession, being insufficient. Where each of the parties in an action of trespass *qu. cl. fr.,* claimed title to the *locus in quo,* when the acts complained of were done ; and the defendant further claimed, that if the legal title was in the plaintiff, he, the defendant, having disseised the plaintiff, was then in the exclusive possession of the land ; whereupon the court charged the jury, that if the plaintiff had been disseised and was not in possession, when the acts complained of were done, he could not maintain this action ; and then proceeded to say, that if the plaintiff had title to the land, at the time of the alleged trespasses, his having been previously disseised and dispossessed thereof, by the defendant, would not prevent his recovery in this action, provided he had, previous to such acts of trespass, regained and retaken possession, so that he was in possession at the time said acts of trespass were committed ; that although a simple reëntry upon the land would not revest the possession in him, yet if, as he

*Middlesex,*
July, 1849.

Payne
*v.*
Clark.

claimed, he went upon the land in 1843, and, as owner thereof, retook the possession, and remained there for some two or three days, cutting and carrying away the wood and timber, keeping the defendant out of the possession and forbidding him from entering upon the same, such a retaking of possession would enable him to maintain this action for any act of trespass committed by the defendant, at any time thereafter;—it was held, 1. that taking *the whole charge together, it could not be considered as dispensing with possession* by the plaintiff, at the time of the alleged trespasses; 2. that the charge was not to be construed as asserting, that the acts of the plaintiff in 1843, specified therein, constituted, as matter of law, a retaking of the possession by him; consequently, that, after a verdict for the plaintiff, a new trial ought not to be granted for a misdirection.

THIS was an action of trespass *quare clausum fregit*; tried on the general issue, at *Middletown, February* term, 1849.

The plaintiffs claimed title to the *locus in quo,* under a deed from *Richard Brown,* dated *December* 15th, 1791, and sundry mesne conveyances from his grantees and those claiming under them, to the plaintiffs. They claimed to have proved, that in the winter of 1810, their father, who then claimed to be the owner of the land in question, entered thereon, and cut and removed the wood and timber from a portion thereof; and that in the winter of the succeeding year, after the death of their father, their brother, claiming title as his heir, also cut and removed the wood then growing on the same land; that in the year 1843, one of the plaintiffs went upon the land, in the winter season, and caused some wood and timber to be cut and removed therefrom, and was engaged in such cutting and removal for two or three days; that during this time, he took down a portion of a fence then recently erected on the land by the defendant, and forbade his cutting thereon or removing therefrom, any wood or timber. The plaintiffs made no further claim to the possession of the land, except such as the law, upon these facts, would presume to attend the ownership thereof.

It was admitted, by the defendant, that in the year 1846, he cut and removed wood and timber standing on the land.

It appeared, that the land was five or six miles distant from the residence of the plaintiffs; that it had never been entirely enclosed until within the last six or seven years; that it is rough wood land, of no use, after the wood has been removed, until a new growth is fit for cutting; and that it was

within about a mile of the defendant's residence, at a place called *Governor's Hill*, most of the adjoining tracts being unenclosed.

The defendant claimed title to the land, under an instrument signed by a committee of the town of *Chatham*, dated *June*, 26th, 1793, purporting to convey part of an old highway to *Daniel Shepherd*, jun., and sundry mesne conveyances to the defendant; that since the execution of said instrument, he and those under whom they claimed, had been in the actual occupation of said land as owners, claiming title thereto exclusively of all others; that sometime prior to the entry of one of the plaintiffs thereon in 1843, the defendant had caused said land to be enclosed, by a good and substantial fence, in a common enclosure with other lands owned by him; that the several entries upon said land, as claimed by the plaintiffs, if any such were made, were trespasses; and that when they entered thereon in 1843, the defendant forbade such entry.

The defendant thereupon claimed, that whatever might be the effect of the several conveyances of the land, he had, by reason of his occupation thereof, under these circumstances, acquired an absolute title thereto, as owner. He further claimed, that he was in possession of the land, claiming to own it, when this suit was commenced, and when, and long before, the trespasses complained of were committed; and that the plaintiffs, if they had shown a legal title to the land, could not, under these circumstances, sustain an action of trespass for the alleged injuries.

The plaintiffs claimed, that if they had a legal title to the land, when the trespasses complained of were committed, and the defendant was in the actual possession of the land, at that time, before and since, claiming the exclusive title thereto as owner, and holding out all others, the action of trespass was a proper remedy for the injuries complained of—that title, under such circumstances, was sufficient to enable the plaintiffs to maintain their action.

The court charged the jury as follows: That so far as the mere paper title of the parties respectively to the land in question was concerned, as the original deed under which the paintiffs claimed title was prior to the execution of the instrument under which the defendant claimed, it would pre-

vail, as against that instrument, and showed title in the plaintiffs.

In regard to the title of the defendant, as derived from the adverse possession of said land, and in regard to the right of the plaintiffs to maintain this action, if they had been disseised, and were not in possession at the time when said trespasses were claimed to have been committed, the court charged the jury in conformity to the defendant's claims, except that the court told the jury, that if the plaintiffs had title to the land in question, at the time the trespasses complained of were committed, their having been previously disseised and dispossessed thereof, by the defendant, would not prevent their recovery in this action, provided they had, previous to such acts of trespass, regained and retaken possession, so that they were in possession at the time said trespasses were committed; that although a simple reëntry upon said land would not revest the possession in them, yet if, as claimed by them, they went upon the land in 1843, and as owners thereof, retook the possession, and remained there, for some two or three days, cutting and carrying away the wood and timber, keeping the defendant out of the possession, and forbidding him from entering upon the same, as claimed by them, such a retaking of possession would enable them to maintain this action, for any act of trespass, committed by the defendant, at any time thereafter, (if within three years next previous to the commencement of this suit.)

The plaintiffs obtained a verdict; and the defendant moved for a new trial for a misdirection.

*Bulkley* and *C. C. Tyler*, in support of the motion, contended, 1. That the action of trespass *qu. cl. fr.*, is adapted and intended to give the possessor a remedy for an injury to his possession; and it cannot be maintained by one not in possession, when the wrong was done, though the lawful owner, there being an adverse possession in another. *Wheeler* v. *Hotchkiss*, 10 *Conn. R.* 225. *Chatham* v. *Brainerd*, 11 *Conn. R.* 60. *Toby* v. *Read*, 9 *Conn. R.* 216. 223. *Cook* v. *Foster*, 2 *Gilman*, 652. *Congregational Society in Bakersfield* v. *Baker*, 15 *Verm. R.* 119. *Campbell* v. *Arnold*, 1 *Johns. R.* 511. *Stuyvesant* v. *Tompkins*, 9 *Johns. R.* 61. S. C. in error, 11 *Johns. R.* 569. 571. *Van Brunt*

v. *Schenck, Id.* 377. 385.    *Wickham* v. *Freeman,* 12 *Johns. R.* 183.    *Taylor* v. *Townsend,* 8 *Mass. R.* 411. 415.    *Allen* v. *Thayer,* 17 *Mass. R.* 299.    *Shepard* v. *Pratt,* 15 *Pick.* 32.    *Chadbourne* v. *Shaw,* 22 *Maine,* (9 *Shep.*) 450.    3 *Stark. Ev.* 1435, 6.    1 *Chitt. Plead.* 162.    The court should have charged the jury explicitly, that possession of the plaintiffs, when the trespasses were committed, was necessary to sustain the action; and that their possession must have been *actual* and *exclusive.    Stocks* v. *Booth,* 1 *Term R.* 430.

2. That by the charge to the jury, in this case, if the plaintiffs, having the legal title, went upon the land in 1843, and, as owners, retook the possession, and exercised acts of ownership there, keeping the defendant out of possession, this would enable them to maintain the action brought, for an injury to the land, done by the defendant, at any time *thereafter—i. e.,* when the defendant was in the exclusive possession.

*Barnes,* contra, contended, That the plaintiffs were entitled to retain their verdict.    He remarked, 1. That the question of possession was fairly left to the jury, and they have decided it.    The paper title of the plaintiffs is the elder and better title; and the court will not send the cause to a new trial for the benefit of a disseisor and trespasser.

2. That the defendant can not justly complain of the charge to the jury.    It was made in conformity to his claim, with a single exception as to the existence and effect of a reëntry; and the direction on this point was sufficiently favourable to the defendant; for, it is supposed to be well settled, that a disseisee, without reëntry, may sustain an action of trespass for the disseisin itself, and that, after reëntry, he may sustain trespass for any intermediate injury to the freehold; and the reason assigned is, that, by the reëntry, he is restored to his possession *ab initio.    4 Kent's Com.* 119.    2 *Greenl. Ev.* 577.

Such seems to be the legal consequence of a *simple reëntry,* and much more of one attended with the acts of ownership stated in the motion.

3. That the case does not depend, like that of *Wheeler* v. *Hotchkiss,* 10 *Conn. R.* 225. on a mere right of entry.    Be-

sides, the land in controversy is *wild* land, and as such, on the authority of the case last cited, it is exempt from the general rule.   If the decision in that case was designed to overrule the doctrine previously received in this state, it is worthy of remark, that in the subsequent case of *Chatham* v. *Brainerd* & al., 11 *Conn. R.* 60., the court hold, that in trespass *quare clausum fregit*, title in the plaintiff, or possession, is essential to a recovery.

*Middlesex,*
*July, 1849.*

Payne
*v.*
Clark.

STORRS, J.   Each of the parties in this case claimed, on the trial, to have had title to the *locus in quo*, when the trespasses complained of were committed, through conveyances from the former owners, and the defendant also, by disseisin. The defendant further claimed, that if the legal title was in the plaintiffs, the defendant was then in the exclusive possession of the land, and therefore, that the plaintiffs could not maintain this action ; and he complains, that the court not only omitted to charge the jury, that possession in the plaintiffs was necessary, but, on the contrary, instructed them, that a legal title in them, without such possession, was sufficient to entitle them to recover.   If this is the import of the charge, it was clearly erroneous, since no principle is better settled, than that the plaintiff must be in possession of the land, when the injury is committed, in order to maintain an action of trespass *quare clausum fregit*.

But we think, that the defendant has misconceived the true meaning of the charge, and that, on a just construction of it, it is not obnoxious to the objection which he makes to it.   Considering the last clause of it as an isolated proposition, unconnected with what had before been stated, it would indeed literally import, that if the plaintiffs, being disseised of the land, retook the possession of it, they might maintain this action for a trespass committed thereafter, and at a time after they should have ceased to retain the possession.   But, in order to ascertain the true import of the charge, it should be all taken together, since it consists of several propositions connected with and explaining each other.   On the same rule of construction by which this last clause is made to express the principle that the plaintiffs could recover for a trespass committed after possession was thus retaken by them, although that possession had been divested before its

commission, it might also be made to mean, that they could recover for it, even although their title, as well as their possession, had ceased when the trespass was committed; for the words, "at any time thereafter," *i. e.*, after such retaking of possession by the plaintiffs, are sufficiently broad and indefinite to reach to that extent. Yet no one would suppose, that such was the idea intended to be conveyed, when the previous parts of the charge, in connexion with which the last part of it was announced, are considered.

The motion shows, that the defendant claimed, that he was in possession of the land, disseising the plaintiffs, when the trespasses complained of were committed; and that, under those circumstances, the plaintiffs could not recover for those trespasses, even if they had proved that they then had a legal title to the land; and that, "in regard to the right of the plaintiffs to maintain this action, if they had been disseised, and were not in possession at the time when said trespasses were claimed to have been committed, the court charged the jury in conformity with the defendant's claims." If nothing had been superadded to this part of the charge, it would have exactly accorded with the claim of the defendant, that it was requisite that the plaintiffs should be in possession when the trespasses were committed. But the court proceeds, in continuation of that part of the charge, to say, that if the plaintiffs then had title to the land, their having been previously disseised thereof, by the defendant, would not prevent their recovery, if they had, previous to said trespasses, retaken possession, so that they were in possession when said trespasses were committed. This remark (to which no exception is taken,) plainly strengthens what had before been said as to the necessity of the plaintiffs' being in possession when the trespasses were committed, and was only intended to obviate any difficulty in the way of their recovery arising from the circumstance of their having been before disseised. The charge then concludes, by stating, that although a simple reëntry on the land would not revest the possession in the plaintiffs; yet if they, having title to the land, (for such is the case supposed in the preceding part of the sentence,) went upon the land in 1843, which was before the trespasses complained of, and, *as owners thereof, retook the possession,* and remained there some two or three days,

cutting and carrying away the wood and timber, *keeping the defendant out of possession*, and forbidding him from entering on the same, such a retaking of possession would enable them to maintain this action for any act of trespass committed by the defendant, at any time thereafter. The object of this remark obviously was, to preclude the plaintiffs from the benefit of a simple reëntry, unaccompanied with a retention of the possession ; and although it did not, in so many words, make such retention necessary, when the trespasses were committed, such, we think, was its clear import; and it could not be otherwise understood, by ordinary minds. The charge had previously, as we have seen, asserted and repeated the principle, that, in order to recover, the plaintiffs must have been in possession when the trespasses were committed ; and in the sentence next preceding that which we are now considering, had stated the effect of the plaintiffs' regaining possession after a disseisin, as being a sufficient possession, if continued to the time of the commission of the trespasses ; and this clause, to the generality of which exception is taken, was intended to guard against the inference by the jury, that a retention of the possession was not necessary after such reëntry, and not to convey the idea, that such retention need not be continued to the time of committing the trespasses. Hence, it appears, that there is no inconsistency between that part of the charge in which the plaintiffs' possession of the land is stated to be necessary when the trespasses were committed, and the subsequent part of it, in which, it is claimed, that the court omitted or denied that principle. And it is not to be presumed, that the jury, in their verdict, disregarded, or did not give full effect to, that principle, which had been so clearly stated and repeated to them, by the court.

It has been suggested, that the court below erroneously instructed the jury, that the acts of the plaintiffs in remaining on the land two or three days, and cutting and carrying away the wood and timber thereon, when they went upon the land in 1843, and forbidding the defendant from entering upon it, constituted, as matter of law, a retaking of the possession by the plaintiffs. We do not so interpret the charge. The court had informed the jury, that, if the plaintiffs had been disseised, a retaking of the possession, and retention of

*Middlesex,*
July, 1849.

Payne
*v.*
Clark.

*Middlesex,*
July, 1849.

Payne
*v.*
Clark.

it when the trespasses were committed, was necessary in order to maintain this suit ; and that a mere reëntry, without such retention, would not be sufficient ; and these acts were mentioned in connexion with this part of the charge, as being evidential, but not conclusively so, of the fact that the plaintiffs took and retained possession, and also in order to point out more clearly the difference between the mere reëntry which had been mentioned, and one followed by a retention of the possession.   This being the true construction of this part of the charge, its correctness is not questioned, and is too obvious to require vindication.

A new trial, therefore, is not advised.

In this opinion the other Judges concurred.

New trial not to be granted.