RANDOLPH GRANT vs. EUGENE S. ALLEN AND ANOTHER.

A person has no right, without permission, to go upon his neighbor's land, from which surface water flows upon his own, and put earth upon it, or dig the soil, for the purpose of turning the flow of the water from his own land.

And it is no justification of the act that the flow of the water is endangering the wall of his house, and that he has given notice to the owner of the adjoining lot and that the latter has neglected to take any action.

TRESPASS *qu. cl. fr.*, brought to the Court of Common Pleas for the county of Hartford, and tried to the jury on the general issue, with notice, before *Briscoe, J.*

On the trial it appeared that the plaintiff and defendants were the owners of adjoining lots in the city of Hartford, and had been since and for sometime before the autumn of 1872, the plaintiff occupying as a residence a dwelling house upon his lot, located about eight feet from the division line. In the fall of 1872 the defendants excavated a cellar on their land, and laid the foundations for a large building, which they completed a few months after. The excavation was claimed by the plaintiff to have been made beyond the dividing line, and without his permission, and the wall to have been built close upon the line. There was a space left vacant alongside

the foundation wall which the defendants did not fill up as they built the wall, but left the same open during the winter, spring and summer following. And the plaintiff claimed, and offered evidence to prove, that in August, 1873, during his absence and without his knowledge, the defendants entered upon his land, and filled up the trench, and also carried upon the land a quantity of earth, so as to cover a portion of the strip about five feet wide and sixty feet long and about eight inches deep in places, and graded the same, sloping the earth from the foundation wall towards the plaintiff's house, causing the surface water to run first laterally towards the plaintiff's house, and then lengthwise towards the front instead of the rear as it had formerly run when the surface was in its natural state.

The plaintiff also offered evidence to prove and claimed that he had proved, that in consequence of the filling and grading the surface water had run into his cellar, and that he had been compelled to raise the walk five inches leading from his front gate to the side entrance to his house, and that the filling and grading had destroyed a grass plat and flower-bed along his line.

The defendants offered evidence to prove that they excavated on their land, and put in their foundation wall for the erection of a block of dwelling-houses, while the ground was filled with frost ; that the wall was completed in the month of January, 1873, and formed the west foundation wall of a block of dwelling-houses erected by the defendants, and that it was useless to tamp the wall on the exposed west side while the frost was in the ground ; that in the spring season following, as the frost came out of the ground, the ground slightly settled by their wall, from natural causes, with a slope towards the wall, and that the surface water accumulating on the plaintiff's lot from rains ran into this depression, forming a gully by the defendants' wall, and had so increased the same as to cause the water to flow into the defendants' foundations, and endanger the falling of their wall ; that they several times requested permission of the plaintiff to enter on his land and fill up the gully, and care-

fully grade the same at their own expense, but he refused permission, and neglected to take any action in the matter until about the first of August, 1873, when the defendants peaceably entered on the land in the absence of the plaintiff, and filled up the gully with selected and proper soil, and tamped the same in a proper manner, doing no damage whatever to the premises of the plaintiff; and they further offered evidence to prove that such grading was a material benefit to the lot of the plaintiff, and that no surface water was turned by it except by its running on the top of the ground instead of into the foundation wall of the defendants, and that if any water reached the cellar of the plaintiff it was, and always had been, caused by percolation through his soil; and that they had in no way changed the grade of any part of the plaintiff's lot, except so far as had resulted by properly filling up the gully. And the defendants requested the court to charge the jury in writing as follows :—

1. That it was the legal duty of the plaintiff to grade his lot adjoining to that of the defendants in such reasonable manner as to prevent injury to the defendants' wall from the flow of surface water from his lot.

2. That if the flow of surface water from the lot of the plaintiff was injuring the wall of the defendants, the defendants had a right to enter and abate the same in a reasonable and proper manner, after notice to the plaintiff and neglect or refusal by him to take any action.

The court charged the jury upon these points as follows : " With respect to the two written requests of the defendants, I cannot charge you that they are in accordance with the law in this state. If the defendants went upon the land of the plaintiff without his consent and against his will, and carried earth upon it, and graded it so as to turn the surface water in another direction from that in which it had previously run, such act was a trespass, and they are liable therefor to the plaintiff."

The jury rendered a verdict for the plaintiff, and the defendants moved for a new trial.

*G. Case*, in support of the motion.

1. The law does not compel an adjoining owner to bear the burden of the surface water of his neighbor, but he may keep it off his land by any reasonable means, and he will not be responsible for any consequent damages. *Swett* v. *Cutts*, 50 N. Hamp., 439; *Gannon* v. *Hargadon*, 10 Allen, 106; *Bowlsby* v. *Speer*, 31 N. Jersey Law R., 351; *Miller* v. *Labach*, 47 Penn. S. R., 154; *Hoyt* v. *City of Hudson*, 27 Wis., 656; *Trustees of Delhi* v. *Youmans*, 50 Barb., 316; Am. Law Reg., Jan., 1872, " Digest of law of surface water," by Judge Redfield. This is a general principle and applies to surface water in agricultural districts.

2. But on city lots the law goes further and treats surface water as a common enemy, and makes it the duty of each owner to take care of his own surface water and drain it into the common sewer, or in some other way if possible keep it off from the adjoining owner. Washburn on Easements, ch. 3, sec. 6, § 6; *Bentz* v. *Armstrong*, 8 Watts & Serg., 40. By no other rule could the property of each be enjoyed to its full extent, without liberty of invasion by another. And it is founded on the moral and legal maxim, that one must so use his own as not needlessly to injure the property of another.

3. But the record presents another view of this question. Independently of the rights of owners relating to surface water, the plaintiff's permitting and insisting that his surface water should flow needlessly into the defendants' foundations, was clearly an unreasonable use of his claimed rights, and his refusing permission to prevent it was strong evidence of an intent to injure the defendants' property; at least it showed gross and reckless negligence, and as such was clearly illegal, and should have gone to the jury. *Wheatly* v. *Baugh*, 25 Penn., 528; *Waffle* v. *N. York Central R. R. Co.*, 58 Barb., 413; *Tuthill* v. *Scott*, 43 Verm., 525; *Haldemann* v. *Bruckhardt*, 45 Penn. S. R., 520; *Trustees of Delhi* v. *Youmans*, 50 Barb., 316; *Norcross* v. *Thoms*, 51 Maine, 503; *Brown* v. *Illius*, 27 Conn., 84. And this court has held that one can not turn his surface water upon another to benefit his

own land, and without intent to injure the adjoining owner. *Adams* v. *Walker*, 34 Conn., 466.

4.  In either view of the case, the flowing of the surface water of the plaintiff upon the defendants' wall, under the circumstances, was a private nuisance, within the meaning of the law.  1 Swift Dig., 462; *Whitney* v. *Bartholomew*, 21 Conn., 213.  And unless it be a nuisance, then the defend- ants were placed in serious difficulty, and were without an. adequate remedy, for the falling of their wall might occur suddenly, endangering the lives of the occupants, and neither equity nor law could give timely relief.  And to be obliged to resort to an action on the case for damages might force them to look to an irresponsible party.

5.  The defendants therefore had a right to peaceably and properly abate this flow as a nuisance, after request to be allowed to do it at their own expense and refusal by the plaintiff, by the acknowledged rule of the common law. 1 Swift Dig., 462 · *Amoskeag Manuf. Co.* v. *Goodale*, 46 N. Hamp., 53.

*Eaton* and *Welles*, contra, cited Washburn on Easements, ch. 4, sec. 1, §§ 4, 15; ch. 6, sec. 4, §§ 2, 3; *Thurston* v. *Hancock*, 12 Mass., 226.

PARDEE, J.  The right of the owner of land to determine the manner in which he will use it, or the mode in which he will enjoy it, the same being lawful, is too high in character to be affected by considerations growing out of the retention, diversion, or repulsion of mere surface water, the result of falling rain or melting snow.

There being in the case before us no grant, express or implied, and no stipulation between the parties concerning the mode in which their respective parcels of land shall be occupied and improved, the defendants could not enter upon the plaintiff's land without his consent, place additional earth upon it, change the grade and burden it with a barrier for the diversion of such water from their own land.  He could not compel them to receive it, they could not compel him to

withhold it.   *Earle* v. *De Hart*, 1 Beasley, 280 ; *Gammon* v. *Hargadon*, 10 Allen, 110 ; *Luther* v. *Winnisimmet Ferry*, 9 Cush., 174 ; *Flagg* v. *Worcester*, 13 Gray, 601 ; *Dickinson* v. *Worcester*, 7 Allen, 19.

A new trial is not advised.

In this opinion the other judges concurred.