# Wheeling.

## GILLISON, TRUSTEE *v.* CITY OF CHARLESTON.

### Decided March 27, 1880.

1880
Special Term

Gillison, trustee

City of Charleston.

1. Where a city in grading its streets by cutting ditches and drains collects surface-water and casts it in a body upon the lot or ground of the proprietor below, unless it is so cast into a natural water-course, the proprietor sustains a legal injury, and may recover in an action therefor.

2. It is the duty of a city in making improvements upon the streets, to use such skill, that improvements so made shall not change the course of the surface-water in such manner as to materially injure the property adjoining thereto.

3. To maintain an action of trespass for an injury to real estate, it is necessary to allege and prove possession, either actual or constructive, in the plaintiff at the time the injury was done.

4. The same rule applies to an action on the case brought to recover damages for such injury done to real estate.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Kanawha, rendered on the 11th day of January, 1876, in an action of trespass on the case, in said court then pending, wherein W. E. G. Gillison, trustee of Hattie Slack, was plaintiff, and the City of Charleston was defendant, allowed upon the petition of said city.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgment complained of.

.JOHNSON, JUDGE, furnishes the following statement of the case:

1880
Special Term.

Gillison, trustee
v.
City of Charleston.

This was an action on the case, brought against the city of Charleston in the Circuit Court of Kanawha county on the 8th day of August, 1874. The declaration in the case is as follows:

"IN THE CIRCUIT COURT FOR THE COUNTY OF KANAWHA, WEST VIRGINIA.

" William E. G. Gillison, trustee for Hattie Slack, and who sues for her benefit, complains of the City of Charleston, a municipal corporation of said county, created and organized under the laws of West Virginia, which has been duly summoned, &c., of a plea of trespass on the case; and thereupon the said plaintiff says that he is seized in fee, as trustee for the said Hattie Slack, of a lot of ground situate within the corporate limits of the said City of Charleston, on the — corner of Quarrier and Brooks streets, fronting one hundred and sixty seven feet on Quarrier and three hundred and sixty two feet on Brooks street, with valuable improvements thereon, to-wit: A dwelling-house, out-houses, a spacious garden, &c., the whole being of great value, to wit, of the value of $15,000.00; that the same has been occupied by the said Hattie ever since the year 1868 as a private family-residence, and is still so occupied by her as aforesaid.

" The said plaintiff further avers that before the injury hereinafter complained of, the said property had good natural surface-drainage in front and rear of, as well as through, the said lot, so that it was a dry, healthy and comfortable place of residence of great value as aforesaid. The said plaintiff thereupon says that heretofore, to wit, on or about the 15th day of July, 1872, the said City of Charleston, not regarding the comfort, value and healthiness of the said property as a private family-residence of the said Hattie, and regardless of the health of the said Hattie and family, well knowing the premises,

1880
Special Term.
————————
Gillison, trustee
v.
City of Charles-
ton.
and contriving to injure the said Hattie in her health, and in the health of her children and family, and contriving also to debase the value of said property, and to render it unhealthy, useless, dangerous and of little value as a family-residence as aforesaid, did, negligently, carelessly, wantonly and improvidently, cut and dig sundry superficial water-drains or sluices in the neighborhood of said property, to wit, on Morris and Brooks streets, within the corporate limits aforesaid, whereby, and for that purpose, the surface-water in large quantities for the distance of one mile or thereabouts above the said corporate limits and dwelling and lot, and for a great distance in front and rear of the said dwelling and lot within said corporate limits, and which said surface-water had theretofore passed through the said city by the natural drainage aforesaid, and without approaching or in any manner injuring the plaintiff's said property, was and is conducted to and concentrated upon the said lot and garden of the plaintiff, and in such quantity as to inundate the same, or a large portion thereof, and of some of the adjoining lots to the depth of about six feet, and covering some four acres of the said lots, the said defendant having failed to make or provide adequate means to drain or carry off the said surface-water, so wantonly and improvidently conducted and concentrated on the plaintiff's property as aforesaid, whereby and by means whereof, the plaintiff avers that the value of the said property as a dry, comfortable and healthy private family-residence, with garden, &c., &c., and of the value of $15,000 aforesaid, has been greatly injured, damaged and debased in its said value by the said defendant, and the health of the said Hattie and family greatly endangered and injured by said defendant, to the damage of the said plaintiff, for the use and benefit of the said Hattie as aforesaid, of $10,000; and therefore he sues, &c."

On the first day of December, 1874, the defendant appeared and demurred to the plaintiff's declaration, in

which demurrer the plaintiff joined; and the demurrer being argued and considered by the court was overruled, and thereupon the defendant pleaded not guilty, and issue was thereon joined. On the 4th day of December, 1874, the case was submitted to a jury, who heard the evidence; and the defendant demurred to the evidence, in which the plaintiff joined. The demurrer to the evidence accompanies the record. The jury rendered a conditional verdict for $750.00. The defendant moved to set aside the verdict, on the ground that it was excessive; which motion the court overruled. On the 11th day of January, 1876, the demurrer to the evidence was argued, and considered by the court, and the court being of opinion, that "the matters shown in evidence to the jury were sufficient in law to maintain the issue on the part of the plaintiff," entered judgment for $750.00 upon the verdict. Two bills of exceptions were taken by the defendant. The first, to the refusal of the court to set aside the verdict as being excessive; and the second, to the judgment of the court upon the demurrer to the evidence. To the judgment, the defendant obtained a writ of error and *supersedeas*.

*Mollohon & Nash and Smith & Knight,* for plaintiff in error, cited the following authorities:

1 Denio 595; 32 N. Y. 489; 53 Me. 200; 13 Gray 601; 34 Ga. 326; 5 Del. 243; 35 Penn. St. 328; 9 Kan. 603; Acts 1871, p. 77; 1 Hilliard Torts, ch. 18 p. 565.

*William A. Quarrier,* for defendant in error.

1. The declaration, though not well drawn, is not fatally defective; it sufficiently alleges a cause of action.

2. A wrong-doer cannot complain that the title of the plaintiff is not technically stated in the declaration.

4 Rob. Prac. 811; *Thuscutt* v. *Martin,* 3 Exch. 462; *Jackson* v. *Mordant,* Cro. Eliz. 112.

3. While a municipal corporation, in grading streets, is not liable for the surface-water that overflows a citi-

1880
Special Term.

Gillison, trustee
v.
City of Charleston.

zen's lot, caused by the alteration and grading of streets, where the surface-water is occasioned by melting snow or the down-pour of rain that fell at and near the lot, yet the corporation which alters ancient water-courses, and by the construction of new cross drains, throws the water of these drains or branches into one, and, lower down the stream, dams up the aggregate water, upon a citizen's lot by the construction of an insufficient culvert, it is liable.

4. In this case, the damages found by the jury are compensatory, and not punitive. But the injury was so reckless and unnecessary, that it would have justified smart money or vindictive damages.

13 How. 363.

5. The defendant, in its bill of exceptions, having, on motion for a new trial, set out the evidence *in extenso*, and not facts proven, this court must reject all the evidence of the exceptor and give full faith and credit to the evidence of the appellee.

*Carrington* v. *Goddin*, 13 Gratt. 587; *Pryor* v. *Kuhn*, 12 Gratt. 615; *Dusenbury* v. *Alford*, 5 W. Va. 115.

6. Municipal corporations are liable for wrongs done to the owners of real estate, by what is called improvements, unless they exercise reasonable care and skill.

Dillon on Corporations, sec. 783.

JOHNSON, JUDGE, delivered the following opinion of the Court:

The first question to be determined in this case is: Was the demurrer to the plaintiff's declaration properly overruled?

Two grounds of demurrer are insisted upon; first, that the declaration does not show a cause of action, because it claims damages against the defendant, the city of Charleston, " for drainage of surface-water upon the lot of the plaintiff by a municipal corporation in the construction of its ditches and drains;" and secondly, that " the declaration does not show possession in the plaintiff at the time the alleged trespass was committed."

1880
Special Term.

Gillison, trustee
v.
City of Charleston.

To sustain the first ground of demurrer the defendant's counsel cites, *Wilson* v. *The Mayor, &c., of New York,* 1 Denio 595; *Mills, et al.,* v. *The City of Brooklyn,* 32 N. Y. 489; *Greely* v. *The Maine Central Railroad Co.,* 53 Me. 200; *Flagg* v. *City of Worcester,* 13 Gray 601; *Roll* v. *The City of Augusta,* 34 Ga. 326; *Clark* v. *The City of Wilmington,* 5 Harr. (Del.) 243; *Carr* v. *The "Northern Liberties,"* 35 Penn. St. 328; *City of Atchison* v. *Challis,* 9 Kan. 603. I will review these authorities and some others, to see what they decide; and then enquire whether they correctly propound the law.

In *Wilson* v. *The Mayor, &c.,* the plaintiff declared in case against the city, alleging that "she owned and was possessed of a house and four lots of ground at the northwest corner of Fortieth street and the Seventh avenue in the City of New York, and that the defendant had so carelessly, &c., raised, graded and made the said avenue and street, as to obstruct the flowing of the water from her premises, and that the raising of the street and avenue by the defendant had turned the water and caused it to run upon her premises, the defendant having omitted to construct or make any sewer, gutter or drain from the premises or along the street or avenue, as it was its duty to do, and as it was bound by law to have done." It was proved upon the trial, that the plaintiff owned the premises and that in the fall of 1842, the defendant graded Fortieth street and Seventh avenue on part of the plaintiff's premises, raising the same about eighteen inches without making any drain or sewer, thereby obstructing the former flow of water from the plaintiff's lots, so that the water ran from the street and avenue, and from the adjacent lots upon the premises, and that it stood there several months, from the autumn of 1842 until the ensuing spring. In the spring of 1843 the defendant made a sluice in Fortieth street, by means of which the water passed off from the plaintiff's premises. The proceedings of the defendant in

1880
Special Term.
───────────
Gillison, trustee
v.
City of Charles-
ton.

raising and grading the streets referred to were admitted to be regular.

The defendant's counsel moved for a non-suit, insisting that the action as laid and proved could not be sustained. The motion was granted; and the plaintiff excepted. The Supreme Court affirmed the judgment, holding that the action could not be sustained; and held, that "where a duty, judicial in its nature, is imposed upon a public officer, or a municipal corporation, a private action will not lie for misconduct or delinquency in its performance, even if corrupt motives are charged." Beardsley, Judge, in delivering the opinion of the Court said: "It was conceded on the trial of the cause, that the proceedings for these purposes had been regular. What was done, it was therefore lawful to do; and if the plaintiff was thereby incommoded, it was *damnum absque injuria,* and gave her no right of action against those who had only exercised a legal power vested in them for the public convenience and welfare."

*Mills et al.* v. *The City of Brooklyn,* was an action for damages. The complaint alleged, that the plaintiffs were the owners of a lot with a brick dwelling-house thereon; and that the defendant had the care of the streets and avenues and the control of the widening, sewerage and draining of said streets; and that the defendant so negligently and unskillfully built sewers, where this property was situated, that said sewers had been insufficient to carry off the water brought there by the grade of the streets, and that by reason thereof the plaintiff's lot and house had been repeatedly flooded, &c. The plaintiff recovered a judgment for $900.00 damages. The Court of Appeals reversed the judgment, and held: "A municipal corporation is not liable to a private action for damages accruing, for not providing sufficient sewerage for draining the plaintiff's premises. The duty of draining the streets, &c., of a city, although not a judicial one, is of a judicial nature requiring the exercise of qualities of deliberation and judgment. Where the authorities of a

city caused a sewer to be constructed for a locality which 1880
Special Term.

Gillison, trustee
v.
City of Charles-
ton. included the plaintiff's premises, but which, though not in itself a nuisance, was insufficient to carry off the water, the city corporation was not responsible for plaintiff's damage occasioned by the overflowing."

In *Greely* v. *The Maine Central R. R. Co.*, it was held, that "no action lies for the turning of mere surface water from one's own land upon the land of another."

· In *Flagg* v. *Worcester* the action was for tort. The declaration contained two counts, in the first the plaintiff complained that his estate, abutting on Bowdoin street opposite Chesnut street, had been injured by the water accumulated on these streets, for which the defendant neglected to provide proper and suitable drainage, and instead of doing so suffered and permitted it to escape and flow from Bowdoin street upon and across his land.

Merrick, J., said: "It is not alleged in the declaration, nor was any attempt made upon the trial to show, that Bowdoin and Chestnut streets were not in all respects, except in relation to the alleged deficiency in proper and suitable drainage, made, graded and finished, so as to be safe and convenient for public use. The defendants therefore are not liable upon the case stated and proved by the plaintiff to compensate him for his alleged damage, unless all towns and cities are not only by law required in the construction and maintenance of public highways, to provide such sufficient drainage for all surface-water, that is, all such as is accumulated by the falling of rain or the melting of snow, as will prevent it from thence flowing upon and injuring any contiguous estate ; but are also exposed to an action for all injuries which may thereby be occasioned." The court held, "that no action lies against a city for the injury occasioned to land, bounding on a public street, from the accumulation of water on the surface of the street which the city has neglected to drain."

In *Roll* v. *The City of Augusta*, the complaint against the city was for permitting the South Carolina Railroad

1880
Special Term.

Gillison, trustee
v.
City of Charles-
ton.

Company to construct and use a railroad track along Washington street and Reynolds street, that these tracks elevated the streets, or parts of them, so that the water was caused to flow upon the plaintiff's premises, and into his house, injuring his materials, stock in trade and his house and buildings, that no adequate drainage was provided, &c. The damage was alleged to amount to $24,000.00. The court, on motion of the defendant, after hearing the evidence for plaintiff, ordered a non-suit, to which judgment a writ of error was awarded.

The court affirmed the judgment on the authority of *Mayor and Council of Rome* v. *Omberg*, 28 Ga. 46, in which the court held, "that where the corporation of the city of Rome in grading a street dug so near the lot of the plaintiff, that the earth which supported it crumbled away and the fence fell, no action could be maintained against the mayor and council for this injury."

In *Clark* v. *The City of Wilmington*, it was held that " the city corporation in lawfully grading and opening streets, according to the city plan, is not liable for damages by draining the water on adjacent lots, except in case of obstructing a natural stream." In this case the action was for injury done by the grading and extension of Fifth and Spruce streets, by which the plaintiff's cellar was flooded, his goods damaged and the health of his family impaired. The grading of the streets raised them several feet above the natural level of the ground, and caused a pond of water to collect in the lot opposite to the plaintiff's premises, which was a very offensive nuisance, and which, it was alleged, penetrated through the street and ran into his cellar.

In *Carr et al.* v. *The Northern Liberties* the action was to recover damages by reason of the flooding of plaintiffs' premises, in consequence of the neglect of the defendants to provide sufficient inlets to their culverts to carry off the water at the point where the plaintiff's property was situated, and in consequence of the improper, unskilful and insufficient manner in which the said culvert was

1880
Special Term.

Gillison, trustee
v.
City of Charleston.

originally constructed, and the negligent manner in which it was subsequently kept. The court held that " an action will not lie against a municipal corporation for neglecting to construct a proper system of drainage, in consequence of which a citizen's store was overflowed, from an extraordinary fall of rain, and a stock of goods therein was damaged;" that "a power to construct sewers, given to a municipal corporation by statutes, does not impose upon the corporate authorities an obligation to exercise the power conferred;" that "a municipality having power to grade its streets, is not responsible in damages for an injury sustained by a citizen in consequence of the particular grade adopted. Nor is it liable for neglecting to provide a sufficient number of inlets to its sewers, which were sufficient when constructed, but have ceased to be so in consequence of the increase of population, and the greater extent of territory graded and built upon."

*City of Atchison* v. *Challiss* was an action for damage to goods, caused by the accumulation of surface-water in the cellar where they were placed by the plaintiffs below. The complaint was, that the sewer was insufficient to carry off the water, and that the same had not been kept in repair and unobstructed. The court held, that " where the city constructs a sewer or drain for the purpose of carrying off surface-water, it is not bound to construct such a sewer or drain as will be sufficient to carry off all the surface-water in all cases and under all circumstances. After a city has constructed a sewer or drain for the purpose of carrying off surface-water, it may in its discretion wholly abandon or discontinue the same, and never make any further use of it; and where the city does not leave individuals in any worse condition by such abandonment or discontinuance, than they would be if such sewer or drain had never been made, the city will not be liable for any injury to individuals caused by the flow of surface-water."

In *The City of Bangor* v. *Lansil*, 51 Me. 521, it was

1880
Special Term.

Gillison, trustee
v.
City of Charleston.
held, that "the owner of land has the legal right to fill it up so as to interrupt the flow of *surface-water* over, whether flowing from a highway or any adjoining land. Nor does the fact, that the land filled up was a swale, make any difference in the owner's rights, provided no natural water-course is obstructed. If in filling up his lot the owner construct a drain for the flow of surface-water from the highway, which had been accustomed to flow across his lot, and afterwards allow the drain to become obstructed, and it is repaired by the town, the latter can maintain no action to recover the expense of such repairs."

In *Parks* v. *City of Newburyport*, 10 Gray 28, the declaration alleged, that "there ever had been a passage for water over the land of the defendants which the plaintiff had a right to have open, and that the defendants within one year of the date of the writ had obstructed said passage-way so as to turn the water upon the plaintiff's land, by reason whereof the plaintiff's well was destroyed." The court held that the action would not lie, for the interruption of mere surface-drainings and cited *Luther* v. *Winnisimmet Co.*, 9 Cush. 171 and *Ashley* v. *Wolcott et al.*, 11 Cush. 192.

In *Gannon* v. *Hargadon*, 10 Allen 106, it was held, that "the owner of land may lawfully occupy and improve it in such manner as either to prevent surface-water, which accumulates elsewhere, from coming upon it, or altering the course of surface-water, which has accumulated thereon or come upon it from elsewhere, although the water is thereby made to flow upon the adjoining land of another to his loss." The same principle is recognized in *Inhabitants of Franklin* v. *Fisk*, 13 Allen 211.

In *Grant* v. *Allen et al.*, 41 Conn. 156, it was held, that "a person has no right without permission to go upon his neighbor's land, from which surface-water flows upon his own, and put earth upon it, or dig the soil, for the purpose of turning the flow of the water from his own

land. And it is no justification of the act that the flow of water is endangering the wall of his house, and that he has given notice to the owner of the adjoining lot, and the latter has neglected to take any action."

1880
Special Term.

Gillison, trustee
v.
City of Charleston.

, In *Bowlsby* v. *Speer*, 31 N. J. 351, it was held, that " no legal right of any kind can be claimed *jure naturæ*, in the flow of surface-water, so that neither its retention, diversion or repulsion is an actionable injury, even though damage ensue." In that case the defendant was the owner of land situate on a hill-side, below which were the premises of the plaintiff. Above the defendant's land was a pond occasioned and fed exclusively by rain-water. In times of rain this pond ran over and with other surface-water ran down and escaped through a hollow on defendant's land. The defendant erected a stable on his land over this hollow, and thereby caused a portion of said surface-water to run on to the land of the plaintiff. " Held : Such act of the defendant was not actionable."

I propose now to examine a number of authorities not in harmony with those we have cited, but recognizing contrary principles.

In *Adams* v. *Walker*, 34 Conn. 466, the action was for causing an injury by turning the surface-water, which accumulated on the defendant's lot from rains and melting snow, upon the adjoining lot of the plaintiff. The defendant claimed the right to grade his own lot as he pleased, and that if he did this for any lawful purpose of his own, as to prevent the surface-water from flowing into his well, and had no malicious intention to injure the plaintiff, he was not liable for any injury resulting consequently therefrom by the surface-water being turned by such grading directly upon the plaintiff's lot where it had not previously flowed. Hinman, C. J., delivering the opinion of the court, said : " The claim is briefly this, that the defendant might lawfully so grade his own lot as to turn the surface-water, which incommoded him, upon the plaintiff's lot to his injury, if he had no malicious motive, and was seeking only his own

1880
Special Term.

Gillison, trustee
v.
City of Charles-
ton.

benefit. And we think the court was understood by the jury as sanctioning this claim in that part of the charge where they were told that, if they should find that the defendant in grading his lot formed a basin thereon, and that he did this merely to prevent the surface-water from running into his well, or doing other damage to his premises, and if in consequence of such grading and the forming of such basin the water passed from the defendant's land upon the land of the plaintiff in greater quantities and in different places than it had done before, the defendant is not liable therefore.

"The court undoubtedly did not mean to be understood as instructing the jury, that a party might lawfully turn the surface-water which was inconvenient to himself directly upon his neighbor's lot, yet we think this is the purport of this part of the charge. The grading of this lot is spoken of as having been done for the mere purpose of preventing his surface-water from running into his well, or doing other damage to his premises. There was surface-water on his lot which injured his well, and, to get rid of it, he so graded his land as to throw the water upon the land of the plaintiff; and the jury was in substance told that for the injury thus caused no action would lie, unless there was an express intention to injure the plaintiff. As thus understood the charge is in conflict with the doctrine, that a party has no right to discharge the rain-water falling upon his land, or upon the roofs of his buildings upon the land of his neighbor.

" It of course is immaterial whether the water is turned upon another's land by means of a spout or trough projecting from the roof of a building, or whether it is led there by a gutter or a ditch, or turned upon it by means of an embankment upon the side of a hill. The effect is the same, in turning the water from its natural course upon another's land, and the injury to the party, upon whose land it is turned, is the same in either case."

A new trial was granted. The syllabus of the case is:

"A person has no right by grading the surface of his land, to turn the surface-water, which ordinarily falls upon or flows over it, upon the adjoining land of another. And it makes no difference that he does it for the purdose of preventing the water from flowing into his well, or for other lawful purpose, and with no intention to injure the adjoining owner."

1880
Special Term.
Gillison, trustee
v.
City of Charleston.

The court in this last case cites no authority. The case is readily distinguishable from *Grant* v. *Allen*, *Supra* 41 Conn. 156, and is not overruled by it, as the latter case only decided, that "a person has no right without permission to go upon his neighbor's land, from which surface-water flows upon his own and put earth upon it, or dig the soil, for the purpose of turning the flow of the water from his own land."

In *The Mayor, &c. of City of New York* v. *Hurze*, 3 Hill 612, it was held, that "the corporation of the city of New York are bound to repair the sewers, &c., constructed by them; and if an inhabitant be injured by reason of their neglect in this particular, he may maintain an action against them for his damages." The declaration alleged, that the plaintiff was the owner and occupant of a building situated upon Pearl street in said city, where he carried on the business of a "baker and confectioner"; that there were certain basins, culverts and sewers in said street, designed for conducting and carrying off the water running in and upon the same, which it was the duty of the city to keep in proper concondition and repair; that said basins, culverts and sewers became filled up and obstructed, so that they could not carry off the water, &c., and the defendant refused and neglected to remove said obstructions and keep said basins, &c., in proper condition and repair, whereby the premises of the plaintiff were overflowed, and his building, fixtures, &c., with a large quantity of flour, sugar, &c., upon the premises were damaged, &c. The plaintiff recovered a judgment for $750.00, which judgment was affirmed.

1880
Special Term.

Gillison, trustee
v.
City of Charles-
ton.
In *Rochester White Lead Co.* v. *Rochester*, 3 N. Y. 463, it was said, that "a municipal corporation in the construction of its sewers, drains, &c., is bound to exercise that care and prudence which a discreet and cautious individual would use, if the whole loss or risk were to be his own," that "where a duty of a judicial nature is imposed upon a public body, the members of the body, it seems, are exempt from responsibility by civil action for the manner in which the duty is performed"; * * * "but where a duty purely ministerial is violated, or negligently performed, by a public officer or body, an injured party may have redress by action," * * * that "an ordinance of a city corporation directing the construction of a work within the general scope of its powers is a judicial act for which the corporation is not responsible; but the prosecution of the work is ministerial in its character, and the corporation must therefore see that it is done in a safe and skilful manner." To the same effect is *Barton* v. *The City of Syracuse*, 36 N. Y. 54, where it is held, that "in the construction of sewers and keeping them in repair, municipal corporations act ministerially, and are bound to exercise needful diligence, prudence and care."

In *Rhodes* v. *The City of Cleveland*, 10 Ohio 159, the suit was an action on the case for cutting ditches and water-courses in such a manner as to cause the water to overflow and wash away the plaintiff's land. The court below charged the jury, that "the plaintiff could not sustain the action, unless he showed them that the city acted *illegally*, or, if within the scope of authority, that it acted *maliciously*." Under this charge the jury found for the defendant. Upon the hearing of the writ of error Lane, Chief Justice, said: "That the rights of one should be so used as not to impair the rights of another is a principle of morals, which from very remote ages has been recognized as a maxim of law. If an individual exercising his lawful powers commit an injury, the action on the case is the familiar remedy. If a corporation acting

within the scope of its authority should work wrong to another, the same principle of ethics demands of it to repair the wrong; and no reason occurs to the court why the same remedy should not be applied to compel justice from it.   *   *   .   *   It does not appear to me to be a sufficient reason against sustaining this suit, that in other States the remedy is not extended so far. But no decision of our own State goes to deny the right to the present action. In the two cases reported in 4 Ohio 500, 514, we held the corporation of Cincinnati liable for injury done by grading, either illegally or maliciously. This was regarded as carrying the law beyond decided cases. In *Scovil* v. *Geddings*, 7 Ohio 562, we held the agents of the trustees of the town not liable, because they were acting within their jurisdiction. In *Hickox* v. *The City of Cleveland*, 8 Ohio 544, we held the city not liable by action for an injury by grading, because the statute conferring the power prescribed a form of assessing damages by which compensation might be made. Upon the whole we believe that justice and good morals require, that a corporation should repair a consequential injury, which ensues from the exercise of its functions, and that if we go further than adjudicated cases have yet gone, we do not transcend the line, to which we are conducted by acknowledged principles." The court held, that " corporations are liable like individuals for injuries done, although the act was not beyond their lawful powers."

In *Tootle* v. *Clifton*, 22 Ohio St. 247 it was held, that "the erection of an embankment upon one's own land, whereby the surface-water on the adjoining land of another is prevented from flowing in its natural course, and caused to flow off in a different direction over the land of the latter, is a nuisance, for which an action may be maintained without showing actual damage, and for which nominal damages at least may be recovered." Welch, C. J., in delivering the opinion of the court said : "Every act of preventing the water flowing from another's land in its natural channels, and causing it to flow over

*Margin note:*
1880
Special Term.
———
Gillison, trustee
v.
City of Charleston.

1880
Special Term.

Gillison, trustee
v.
City of Charles-
ton.

his land without his consent, is an invasion of his rights and therefore actionable."

In *Thurston* v. *The City of St. Joseph*, 51 Mo. 510, the gravamen of the complaint was, that through negligence in the construction of a sewer water was thrown on the lot of the plaintiff, and thereby her property was injured. The court held, that "the work of constructing sewers is ministerial in its character; and when a corporation undertakes this work, it is responsible in a civil action for damages caused by the careless or unskilful performance of the work. So it is the duty of corporations to keep sewers in repair, and if they are negligently permitted to become obstructed or filled up, so as to cause the water to backflow and do injury, there is a liability on the part of the corporation having control over them."

In *The City of Logansport* v. *Wright*, 25 Ind. 512, it was held, that "an ordinance of a municipal corporation directing the construction of a work within the general scope of its power is a judicial act, for which the corporation is not responsible; but the execution of the work is a ministerial act, and the corporation is responsible that it be done in a safe and skilful manner."

In *City of Indianapolis* v. *Huffer*, 30 Ind. 235, the action was to recover damages resulting from an overflow of the plaintiff's lot and dwelling thereon by water, caused by an insufficient and carelessly constructed sewer erected by the city. The court held, that "an incorporated city is not ordinarily liable for consequential injuries to private property, resulting from the grading and improvement of its streets, if in making such improvements reasonable skill and care be used to avoid the injuries. The skill and care, which is incumbent, relates as well to the plan, as to the execution of the work—in the case of a sewer, to its capacity, as well as to the mechanism in its construction."

In *Ellis* v. *Iowa City*, 29 Ia. 229, the plaintiff claimed that the city negligently and unskilfully built the gutter of a street in front of her lots, so that the basement of

her house was flooded, and damage was done to the house, 1880 Special Term.

Gillis m, trustee
v.
City of Charleston. furniture, &c. The street had been graded before the level of the plaintiff's lots in accordance with the grade established by the city; and provision was made to carry off the water that would flow along the street by gutters. The plaintiff claimed that the water overflowed from the gutter, and her lots were flooded in consequence. The judgment of the court below was for plaintiff and was affirmed. The Supreme Court held that "if a city in grading its streets causes the work to be done in a careful and skilful manner, it will not be liable to injury to property resulting therefrom; if on the other hand the work is done in an unskilful manner, it will be liable for such injuries. It was accordingly held, that if the city in filling a street to bring it up to the established grade, whereby it was raised above the lots of the plaintiff, constructed unskilful and insufficient gutters, by reason of which the water was caused to flow from the street on to the premises of plaintiff, it would be liable for injuries to the property resulting therefrom."

In *Nevins* v. *The City of Peoria*, 41 Ill. 502, it appeared, that the city caused the grade of a part of Main street running along the bluff to be raised, and caused other work to be done for the purpose of directing the flow of water from the west side of Main street, which was its natural channel, to the east side and through a new channel to the river, thus improving the drainage. The appellant had at that time a water-cure establishment in operation on the east side of Main street; and he claimed that the work undertaken by the city was badly and carelessly done, and never completed, and that in consequence thereof his house and grounds were flooded at any considerable rain with mud and water, and that a stagnant pond covering from one to two acres was formed within a short distance from his house, rendering it unhealthy and ruining his business. The court held that a city has no more power over its streets than a private individual has over his own land; and it

1880
Special Term.

Gillison, trustee
v.
City of Charleston.

cannot under the plea of public convenience be permitted to exercise that dominion to the injury of another's property in a mode that would render a private individual responsible in damages without being responsible itself. The same law, that protects the right of property of one private individual against invasion of other individuals, must protect it from similar aggressions on the part of municipal corporations. A city may elevate or depress its streets as it thinks proper, but if in so doing it turns a stream of mud and water upon the grounds and into the cellars of one of its citizens, or creates in his neighborhood a stagnant pond that brings disease upon his household, it should not be excused from paying for the injuries it has directly wrought.

In *City of Aurora* v. *Gillett et al.*, 56 Ill. 132, the action was case to recover damages resulting from the flooding of the basement of the Aurora House in said city occupied by the plaintiffs, the flooding occurring, as was alleged, by reason of the gutters on both sides of Main street being filled up, and being otherwise defective. The case of *Nevins* v. *The City of Peoria, supra*, was approved and the same principles again laid down.

In *City of Aurora* v. *Reed et al.*, 57 Ill. 30, it was held, that " where the city through its proper officer fixes the grade of a street, and property-owners improve the street under the direction of the officer, and the improvement of the street is so made, that water from rains and melting snow runs to and discharges itself over a lot owned by an individual, the city is liable for damages. The city has no right to turn surface-water on private property, nor does it change the principle, that the street was improved before the lot was. Nor does it change the liability of the city by showing that other property owners on the street filled up a portion thereof in front of their lots, so as to turn the water on plaintiff's house. If the officials of a city permit persons to place obstructions in the streets, the city will be liable for injury resulting therefrom. It is no defence to show that plaintiff might have

1880
Special Term.

Gillison, trustee
v.
City of Charles-
ton.

dug ditches that would have protected his property. He was under no legal obligation to do so; and the city was. It was the duty of the city to provide proper sewerage to carry off such water. It is armed with ample power to provide proper means therefor; if necessary, it could condemn ground for the construction of sewers, or use the streets therefor as far as practicable." To the same effect is *City of Alton* v. *Hope*, 68 Ill. 167.

In *Pettigrew* v. *The Village of Evansville*, 25 Wis. 223, it was held, that "the owner of land, on which there is a pond or reservoir of surface-water, cannot lawfully discharge it through an artificial channel directly upon the land of another greatly to his injury. A municipal corporation has no greater power than natural persons in this respect except through an exercise of the right of eminent domain. The fact, that such artificial channel does not extend entirely to the other party's land, will not affect the question." These principles were announced through Dixon, Chief Justice. In the opinion he attempts to reconcile some of the Massachusetts decisions with those principles; but I do not think they can be reconciled in any way. In some States in the east municipal corporations are not held responsible for the manner of disposing of surface-water, no matter how injurious to the property of the citizen. In the west such corporations are held responsible for such injuries, as we have seen by a review of the authorities.

In *Ashley* v. *The City of Port Huron*, 35 Mich. 296, the action was instituted to recover damages for an injury caused to the house of the plaintiff by the cutting of a sewer under the direction of the city authorities and under city legislation, the validity of which was not questioned. The necessary result of cutting the sewer the plaintiff claimed, was to collect and throw large quantities of water upon his premises, which otherwise would not have flowed upon them. The court held, that "a city is held liable for injury to plaintiff's house, resulting from the cutting of a sewer by the city authori-

1880
Special Term.

Gillison, trustee
v.
City of Charles-
ton.

ties in such a manner as to cause the collection of large quantities of water, which otherwise would not have flowed there, and which were thereby thrown upon his premises. Such an invasion of another's premises is a trespass, as much as would be the sending of people there with picks and spades to cut a street through them."
Cooley, Chief Justice, in delivering the opinion of the Court said : "It is manifest from the authorities, that they recognize in municipal authorities no exemption from responsibility, where the injury an individual has received is a direct injury, accomplished by a corporate act, which is in the nature of a trespass upon him. The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it, than has a private individual. If the corporation send people with picks and spades to cut a street through it, without first acquiring the right of way, it is liable for a tort ; but it is no more liable under such circumstances, than it is when it pours upon his land a flood of water by a public sewer so constructed that the flooding would be a necessary result. The one is no more unjustifiable than the other, and no more an actionable wrong than the other. Each is a trespass ; and in each instance the city exceeds its lawful jurisdiction. A municipal charter never gives, and never could give, authority to appropriate the freehold of a citizen without compensation, whether it be done by an actual taking of it for streets or buildings, or by flooding it, so as to interfere with the owner's possession. His property-right is appropriated in the one case as much as in the other."

Judge Cooley in his recent and most excellent work on Torts, page 580, after reviewing the authorities on this subject comes to the following conclusion : "Where the surface-waters are collected and cast in a body upon the proprietor below, unless into a natural water-course, the lower proprietor sustains a legal injury and may have his action therefor." He says this is the rule that has

been applied to municipal corporations; and he further 1880
Special Term.
says of municipal corporations: "While they are not Gillison, trustee
bound to construct sewers or drains to protect adjoining City of Charles-
owners against the flow of surface-water from the public ton.
ways, yet if they actually construct such as must carry
water upon adjacent lands, they are liable, as much as
they would be, if they had invaded such lands by send-
ing in their servants or otherwise." We think Judge
Cooley reached a sound and just conclusion.

A number of the authorities we have cited recognize
the principle that individuals and municipal corporations
have the right to dispose of surface-water in any man-
ner they please, to prevent its flow from adjoining lands
upon their premises, although the result may be to flood
the adjoining land, or to expel it, throw it upon the
lands of their neighbors, and in either case are not lia-
ble to an action. These cases seem to lose sight entire-
ly of the wholesome principle of ethics as well as law,
that a man may use his own property in any manner he
pleases: *Provided,* he does not thereby interfere with the
rights of his neighbor. Some of the authorities seem
to regard a municipal corporation as a little monarchy
acting for the public good, and absolutely without any
responsibility for injuries inflicted upon individuals in
case of raising or depressing the grade of the streets
and thereby changing the natural course of the surface-
water; and if by means of its improvements it throws it
upon the adjacent property-holder to his great detriment
and loss, and he complains the answer is: "*salus populi
est suprema lex;*" and if he still insists that he has been
greatly injured and ought to be compensated, the final and
crushing answer is: "*damnum absque injuria;*" and the
poor sufferer thinking the law is against him, submits
with the best grace he can. I see no reason why a
municipal corporation should be exempt from liability,
where it commits an act in the nature of a trespass to
the injury of a citizen in carrying on its works of im-
provement, even though it has the right to grade its
streets in such manner as it determines.

1880
Special Term.

Gillison, trustee
v.
City of Charles-
ton.

Syllabus 1.

Syllabus 2.

It is not necessary to determine in this case whether the municipal corporation would be liable for injuries done to the property of citizens while grading the streets, if such grade had been established by the city, and the work was executed with skill and care according to the plan so adopted; but where a city in grading its streets by cutting ditches and drains collects surface-water, and casts it in a body upon the lot or ground of the proprietor below, unless it is so cast into a natural water-course, the proprietor sustains a legal injury and may have his action therefor.

The allegation in the declaration in this case is, that the city of Charleston "did negligently, carelessly, wantonly, and improvidently cut and dig sundry superficial water-drains or sluices in the neighborhood of said property, to wit: on Morris and Brooks streets, within the corporate limits aforesaid, whereby and for that purpose the surface-water in large quantities for the distance of one mile, or thereabouts, above the said corporate limits and dwelling and lot, and for a great distance in front and rear of said dwelling and lot, within said corporate limits, and which said surface-water had theretofore passed through the said city by the natural drainage aforesaid, and without approaching or in any manner injuring the plaintiff's said property, was and is conducted to and concentrated upon the said lot and garden of the plaintiff, and in such quantity as to inundate the same, or a large portion thereof, and of some of the adjoining lots, to the depth of about six feet, and covering about four acres of the said lots, the said defendant having failed to make or provide adequate means to drain or carry off the said surface-water, so wantonly and improvidently conducted to and concentrated upon the plaintiff's property, as aforesaid, whereby and by means whereof, &c."

This allegation certainly shows a cause of action against the city. It was the duty of the city in making its improvements upon the streets, to use such skill that the improvements so made should not change the course

1880
Special Term.

Gillison, trustee
v.
City of Charles-
ton.

of the surface-water in such manner as to materially injure the property adjoining thereto. The city is armed with full power to do this, and if it fails in such cases to provide proper drainage, it is answerable for the damage it does such property-holders.

The other ground of demurrer is, that the declaration does not allege that the plaintiff was in possession of the property at the time the injury was done thereto. I fully agree with one of the counsel for the defendant in error, that "the declaration is not a model one, and it does not deserve to be handed down as a precedent for future cases." But it is insisted by the same counsel, that it is not so radically defective as to justify a reversal of the judgment. The allegation as to possession is, "and thereupon the said plaintiff says, that he is seized in fee, as trustee for the said Hattie Slack, of a lot of ground situate within the corporate limits of the said city of Charleston on the corner of Quarrier and Brooks streets. * * * That the same has been occupied by the said Hattie, ever since the year 1868 as a private family residence, and is still so occupied by her as aforesaid. * * * The said plaintiff thereupon says, that heretofore, to wit, on or about the 15th day of July, 1872, the said city of Charleston not regarding," &c., did the injuries complained of. The action was brought in August, 1874.

The counsel for defendant in error insists that the declaration shows, that at the time suit was brought, the plaintiff held the legal title to the property, and that his *cestui que trust* had held the possession of it from the year 1868 ; and that this is an allegation of the title and possession both in the trustee. Unfortunately for this position, the declaration does not allege that the *cestui que trust* held the possession from 1868. It says, the said *Hattie* so held it, but it is not alleged that the *trust* existed all that time. It may be that she held it as lessee of some one. We are not told how she held it.

To maintain an action of trespass for an injury to real Syllabus 3. estate, it is necessary to allege and prove possession,

3a

either actual or constructive, in the plaintiff at the time the injury was done. *Smith, et al., assignees of Clarke* v. *Miller*, 1 Durnf. & E. 256 ; *King* v. *Justices of Derbyshire*, 4 Durnf. & E. 260 ; *Brown* v. *Ware*, 25 Me. 411 ; *Payne* v. *Clark*, 20 Conn. 30; *Davis* v. *Young*, 20 Ala. 151 ; *DeJarnett* v. *Haynes*, 23 Miss. 600 ; *Smith* v. *Zell*, 3 Eng. 470. The same rule applies to an action on the case brought to recover damages for injury done to real estate. *Parker, et al.*, v. *Hotchkiss*, 25 Conn. 321.

The reason for these rules is obvious ; such an action is brought to recover for damages done to the possession ; and a lessee in possession would have the same right to bring such an action to recover for such an injury, as if he owned the property. If Hattie Slack was a lessee of the property at the time of the injury thereto, then she should have brought the action in her own name ; but if she was occupying the premises at that time under the deed of trust to the plaintiff Gillison, then the declaration should have shown, that such trustee at that time held the property, and had therefore constructive possession thereof. The declaration does not show this, and is therefore fatally defective, and the demurrer thereto should for that reason have been sustained.

The judgment of the circuit court must therefore be reversed with costs to the plaintiff in error ; and this Court proceeding to render such judgment as the circuit court should have rendered, the verdict of the jury is set aside and the demurrer to the declaration is sustained, and the case is remanded to the circuit court of Kanawha county with instructions to permit the plaintiff to amend his declaration, if he shall be so advised, within such time as the court may deem reasonable, and to further proceed according to the principles of this opinion, and further according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CAUSE REMANDED.